IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PRESTON McDADE, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-5519 |
| | : | |
| IQ DATA INTERNATIONAL, INC., | : | |
|     Defendant. | : | |

MEMORANDUM

**BEETLESTONE, C.J.**                                                                 OCTOBER  9 , 2025

      Plaintiff Preston McDade filed a *pro se* Complaint against IQ Data International, Inc., ("IQ") alleging claims under the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA"). McDade seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant McDade leave to proceed *in forma pauperis* and dismiss his Complaint.

**I.      FACTUAL ALLEGATIONS**[1]

      McDade's claims concern IQ's efforts to collect a debt that McDade owes his former property manager and the adverse impact of the reporting of that debt on McDade's credit report. The Complaint does not describe the underlying debt in any factual detail, but the attached exhibits reveal it concerns over $2,500 McDade owed his former property management company, Drexel Brook Apts, which then retained IQ to collect the outstanding balance. (Compl. at 31-34, 42.)   McDade claims he disputed the "alleged debt" with IQ and "requested proper validation" of the debt "pursuant to FDCPA § 1692g(b)." (*Id*. at 1.)   His dispute letter

---

[1] The following allegations are taken from the Complaint and the documents and exhibits McDade attached to the Complaint. The Court adopts the pagination supplied by the CM/ECF docketing system.

demanded that IQ prove he "is contractually obligated to pay off this debt" and also sought a copy of any agreement between IQ and its client authorizing it "to collect on this alleged debt." (*Id*. at 17.)  He claims IQ responded with insufficient "validation" because, although it produced "a lease agreement and a final account statement," it did not provide the requested "proof of assignment or authority from the original creditor." (*Id*. at 1, 3-4; *see also id.* at 31-34.)

According to McDade, IQ violated the FDCPA, 15 U.S.C. § 1692g(b), by continuing to report the debt to consumer reporting agencies despite having failed to provide "a valid assignment or collection authority." (*Id.* at 3, 10, 11, 13.)  He alleges that his credit score was negatively affected, and that IQ failed to investigate, correct, or delete "inaccurate information after notice of disputes" in violation of the FCRA, 15 U.S.C. § 1681s-2(b).  (*Id.* at 2, 3; *see also id.* at 45-46 (showing that the account is in collection and past due).)  As a result of his decreased credit score, McDade suffered "housing denials, reduced credit opportunities, and emotional distress."  (*Id.* at 7; *see also id.* at 12, 14.)  Based on these alleged statutory violations, McDade seeks damages and an order ceasing "unlawful collection activity" and directing removal of the "disputed tradeline" from his credit report.  (*Id.* at 2.)

II.     **STANDARD OF REVIEW**

Because McDade appears to be incapable of paying the filing fees to commence this action, the Court will grant him leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in McDade's favor, and

ask only whether the Complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because McDade is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

Furthermore, the Court must dismiss any claims over which it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.").  The Court's continuing obligation to assure its jurisdiction includes an assessment of whether

3

the plaintiff has standing to raise his claims. *Seneca Res. Corp. v. Twp. of Highland, Elk Cnty., Pa.*, 863 F.3d 245, 252 (3d Cir. 2017) ("Our 'continuing obligation' to assure that we have jurisdiction requires that we raise issues of standing . . . sua sponte.").

### III.  DISCUSSION

#### A.  FDCPA Claims

McDade's primary argument is that IQ failed to adequately validate the debt in violation of 15 U.S.C. § 1692g because, although it identified the original creditor and provided a copy of the underlying lease and accounting of the debt, it failed to include "proof of assignment or authority from the original creditor." (Compl. at 1.) The FDCPA "provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors." *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005). To state a claim under the FDCPA, a plaintiff must allege that (1) he or she "is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (internal citation omitted). Where a plaintiff fails to allege facts supporting each of these elements, the FDCPA claim is not plausible. *See Humphreys v. McCabe Weisberg & Conway, P.C.*, 686 F. App'x 95, 97 (3d Cir. 2017) (*per curiam*) (concluding that the FDCPA claim was not pled based on "conclusory and speculative statements that cannot survive a motion to dismiss").

Relevant here, the FDCPA requires a debt collector to provide certain information, including the amount of the debt and the name of the creditor to whom the debt is owed, in an initial communication to a debtor or within five days thereafter. 15 U.S.C. § 1692g(a) (emphasis

added); *see also Szczurek v. Pro. Mgmt. Inc.*, 627 F. App'x 57, 62 (3d Cir. 2015) ("Section 1692g(a) explicitly identifies the information that a debt collector must include in a debt collection letter, such as the amount of the debt, the name of the creditor to whom the debt is owed, and the procedures available to the consumer should he dispute the validity of the debt."). "Section 1692g(a) further requires that the written notice inform the debtor that, if she 'notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt' and mail it to the debtor." *Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568, at *1 (3d Cir. Apr. 18, 2023) (quoting 15 U.S.C. § 1692g(a)(4)). "Section 1692g(b) guarantees that, if a consumer invokes her § 1692g(a) right to request information about a debt, and the consumer invokes this right in writing and within the thirty-day period prescribed by statute, a debt collector must 'cease collection of the debt' until it has provided the requested information to the debtor." *Id.*

Importantly, to have standing to pursue a claim for violation of this or any other provision of the FDCPA, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). The Supreme Court has rejected the notion that "a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion LLC v. Ramierz*, 594 U.S. 413, 426 (2021) (quoting *Spokeo*, 578 U.S. at 341). Instead, a plaintiff must allege a concrete injury separate and apart from an injury under the law. *Id*. (explaining

5

that "an injury in law is not an injury in fact").  An "informational injury" may justify standing when a plaintiff suffers adverse effects or downstream consequences stemming from a failure to disclose information "to which she is legally entitled." *Kelly v. RealPage, Inc.*, 47 F.4th 202, 211-13 (3d Cir. 2022).  However, an alleged failure to disclose clearly or effectively does not yield a sufficient injury for standing purposes.  *Huber v. Simon's Agency, Inc.*, 84 F. 132, 146 (3d Cir. 2023).

McDade alleges that IQ violated the FDCPA by attempting to collect on the debt owed to his former property manager—a debt he does not dispute that he accrued—because, although IQ provided him with the amount owed, the name of the creditor to whom the debt is owed, and the relevant paperwork substantiating the debt in response to his validation letter, it failed to provide him a copy of its agreement with the property manager.  However, the validation provisions of the FDCPA do not require IQ to provide McDade with a copy of its contract with the underlying creditor.  *See Dixon v. Stern & Eisenburg, PC*, 652 F. App'x 128, 133 (3d Cir. 2016) (*per curiam*) ("Notably, as the District Court concluded, the provision does not require a debt collector to independently investigate a debt before it begins collection activities, let alone affirmatively verify every aspect of the chain of assignment of the right to collect on a debt."); *Uzor v. Flink*, No. 25-1873, 2025 WL 1646573, at *4 (E.D. Pa. June 9, 2025) (finding no information injury where "[c]ontrary to Uzor's assertion, Defendants were not required to prove ownership or chain of assignment"); *see also Szczurek*, 627 F. App'x at 62 (rejecting FDCPA violation predicated on argument that consumer was entitled to notification "above and beyond what is required by the FDCPA").  Since McDade has not alleged the deprivation of legally required information, he has neither suffered an informational injury nor alleged a violation of

6

the statute.  Nor has he adequately alleged any harm suffered due to the non-disclosure.[2]  *See George v. Rushmore Serv. Ctr., LLC*, 114 F.4th 226, 236 (3d Cir. 2024) (finding no informational injury for purposes of § 1692g where "[n]othing in the complaint indicates that George could not pay her debt as a result of the letter, that the omission caused downstream financial consequences, or that George suffered distress").  Accordingly, the Court will dismiss McDade's FDCPA claim for lack of standing.

  B.  **FCRA Claims**

  McDade also asserts a claim against IQ under the FCRA.  The FCRA is a federal statute that governs "consumer credit reporting" and seeks "to protect consumers from the transmission of inaccurate information about them."  *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014) (internal quotation marks omitted).  "Under FCRA, [consumer reporting agencies] collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness."  *Id*.  Section 1681s-2(b) is the only section of the FCRA "that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information" such as IQ.[3]  *Eades v. Wetzel*, 841 F. App'x 489, 490 (3d Cir. 2021) (*per curiam*) (internal quotations omitted); *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011).  To state a plausible claim against a furnisher of credit information under § 1681s-

---

[2] Although McDade claims to have suffered "emotional distress," (Compl. at 2, 12, 14), this allegation is not tied to the claimed FDCPA violation and, rather, appears to concern the denial of a housing opportunity because the debt appeared on a credit report.  Further, McDade does not plausibly allege that he cannot pay the debt he owes because he does not have a copy of any agreements between the original creditor and IQ.

[3] To the extent McDade's Complaint refers to obligations of consumer reporting agencies who prepare credit reports, he has not stated a basis for a claim against IQ based on those provisions because there is no suggestion that IQ is a such an agency.

7

2(b), a plaintiff must allege that he "[1] filed a notice of dispute with a consumer reporting agency; [2] the consumer reporting agency notified the furnisher of information of the dispute; and [3] the furnisher of information failed to investigate and modify the inaccurate information." *Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, No. 16-693, 2016 WL 3473347, at *6 (E.D. Pa. June 24, 2016), *aff'd*, 347 F. App'x 87 (3d Cir. 2017) (*per curiam*).  "[T]here must be some threshold showing of inaccuracy [in a credit report] to make a claim against a furnisher." *Holland v. Trans Union LLC*, 574 F. Supp. 3d 292, 302 (E.D. Pa. 2021). "Information is 'inaccurate' within the meaning of the FCRA if it is incorrect or 'misleading in such a way and to such an extent that it can be expected to have an adverse effect.'" *Id*. (quoting *Seamans*, 744 F.3d at 865).

      McDade has not plausibly stated a claim under § 1681s-2(b) because he does not allege how the entry on his credit report was inaccurate.  *See id.*; *Johnson v. Cap. One Auto Fin., Inc.*, No. 25-1407, 2025 WL 2524844, at *5 (E.D. Pa. Sept. 2, 2025) (dismissing § 1681s-2(b) claim against Capital One where the plaintiff "has not alleged facts to suggest that the information Capital One furnished to TransUnion was inaccurate").  Rather, it appears that his challenge to the entry on the credit report is not based on allegations that he does not owe the amount but, rather, that it is "inaccurate" because IQ did not provide him with underlying documentation supporting its relationship with the underlying creditor.  That is not an inaccuracy.  *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010) (finding no inaccuracy where plaintiff "does not contend that the CCS collection account does not pertain to her, that the amount past due is too high or low, or that any of the listed dates are wrong"); *see also Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 776 (7th Cir. 2023) ("[I]ncompleteness or inaccuracy under § 1681s-2(b) requires a showing that the information the data furnisher provided was (1)

8

patently incorrect, or (2) materially misleading, including by omission"). Nor does McDade allege that he notified any consumer reporting agencies to dispute the entry and that those agencies thereafter notified IQ about the dispute. *See SimmsParris*, 652 F.3d at 358 (explaining that the notice "must be given by a credit reporting agency and cannot come directly from the consumer"). To the contrary, the basis for McDade's claim appears to be that he disputed the debt with IQ itself. (Compl. at 4.); *see also Harris*, 696 F. App'x 87, 91 (3d Cir. 2017) ("A consumer may certainly notify a furnisher/creditor directly about his dispute but there is no private cause of action under § 1681s-2(b) for a furnisher's failure to properly investigate such a dispute."). Accordingly, McDade has not alleged a plausible violation of the FCRA.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant McDade leave to proceed *in forma pauperis* and dismiss his Complaint. The Court concludes that amendment would be futile here because McDade's claims are predicated on a baseless legal theory, *i.e.*, that IQ violated his rights under the FDCPA and FCRA by reporting a debt to consumer reporting agencies despite having failed to provide him with a copy of its agreement with the underlying creditor.[4] As discussed above, such facts do not plausibly allege a violation under the FDCPA or FCRA.

An appropriate Order follows, which dismisses this case.

                                                **BY THE COURT:**

                                                **S/ WENDY BEETLESTONE**

                                                **WENDY BEETLESTONE, C.J.**

---

[4] McDade's FDCPA claim will be dismissed without prejudice, however, due to his lack of standing. *See Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 896 (3d Cir. 2020) ("Dismissal for lack of standing reflects a lack of jurisdiction, so dismissal of Thorne's amended complaint should have been without prejudice.").